Mr. Justice Pkay
delivered the opinion of the court.
This cause presents the following points: In March, 1819, Elijah Bland made a parol contract with James A. Maxwell, whereby, for the consideration of 12,000 dollars, to be thereafter paid, he sold him three lots of ground in the town of Port Gibson, known as “ Bland’s Tavern.” No writing of any kind appears to have been drawn between the parties, except a note for 4000 dollars, which was executed by Maxwell to Bland. Which note Bland indorsed, and succeeded in having it discounted at bank. The 4000 dollars which he received on the discount of this note, was regarded as a payment to that amount under the contract for the lots with Maxwell.
Bland died and his widow Elizabeth and Benjamin Smith took out letters of administration upon his estate. The note of 4000 dollars, drawn by Maxwell and endorsed by Bland, remained unpaid, and Maxwell being insolvent, it was believed to be for the interest of all parties to abandon and cancel the contract, for the sale of the lots to Maxwell, which was accordingly done, and Maxwell surrendered up to the hands of Bland all title and inter? *814 est, which he had derived from the sale of the lots, and Elizabeth Bland as administratrix, in consideration of this surrender, undertook to pay and discharge the said note of 4000 dollars given by Maxwell under his said contract, and which was now held by the Mississippi bank.
In pursuance of this arrangement, said note was paid by the administratrix, who substituted for it her own, with the complainant as first indorser. This note, under the rules of the bank, she was compelled to execute “ in her private capacity,” although it was for a debt of the estate she represented.
The administratrix some years after intermarried with John Coursey, who became administrator in right of his wife, and who renewed said note in bank, from time to time paying the calls thereon, and complainant continuing the first endorser thereof, until 1838, when the note having been reduced by payments to 876 dollars was protested and the complainant as first indorser was compelled to pay the same.
John Coursey became insolvent, and the administratrix and heirs of Bland have refused to reimburse the complainant the amount which he thus paid out, in discharge of a liability of said estate.
The lots in regard to which the contract was made and can-celled were by the legislature, in June, 1823, directed to be sold as the property of the heirs of Elijah Bland, which sale was accordingly made by their guardian, and the proceeds appropriated to their use.
Upon these facts the complainant prayed that the chancellor would decree the sum of 876 dollars, with. interest, to be paid him out of Elijah Bland’s estate, which is admitted to be solvent.
Upon the hearing of the cause in the superior court of chancery, the bill was dismissed with costs, and the complainant has brought the case to this court by appeal.
We are here to inquire whether the amount claimed is properly chargeable on the estate of Elijah Bland. It is not necessary now, to determine what effect would have been given to the contract of sale of lots, in Port Gibson, between Bland and Maxwell. That contract has been effectually cancelled; and upon *815 that transaction, the note of 4000 dollars, which had been given by Maxwell to Bland, in part payment, under the contract so cancelled, must have become chargeable to the estate of Bland; and was so regarded by the administratrix of his estate, who gave, under the regulations of the bank, as a substitute for such note, her private note.
Does this transaction in any manner release the estate of Bland from its liability for the payment of the demand in question?
In 10 Peters, 567, this question is decided. The court there says, “ If executors have paid a debt to banks, or the banks have accepted their notes in payment, in place of the notes of the testator, so that the executors become the debtors and personally responsible to the banks; the only effect of this is, that the executors become the creditors of the estate, instead of the banks, and may resort to the trust fund to satisfy the debt.” And in 2 Leigh, 70, it is said, “ that when an executor has become a creditor of his testator by satisfying claims to a larger amount than the personal assets received by him, he may be substituted in the place of the creditor, whose claim he has discharged, and participate of the equitable assets, so far- as those creditors might have participated thereof.”
Having thus ascertained the rights of executor or administrator when discharging the debts of his testator or intestate, we will inquire what are the rights of one who pays those debts as the surety of the executor or administrator? In 4 Randolph, 444, we find the question thus emphatically decided: “The surety is entitled to every remedy, which the creditor has against the principal debtor, to enforce every security; in short, to stand completely in the place of the creditor.”
If the authorities here cited are to be relied on, and their character is too elevated to be questioned, they dispose of the whole case. The complainant has paid a debt of Bland’s estate, as the surety of the administrator who had become bound for the same, and he asks only to be substituted to the lien on the estate which such payment would have given the administrator had it been made by him.
The doctrine of substitution is not' regarded in equity, as *816 founded on contract, but as the offspring of natural justice, and courts should rather incline to extend than restrict the operation of a principle so elevated and pure.
We are -well satisfied, both from principle and authority, that the prayer of the bih ought to be granted.
The decree of the court below must, therefore, be reversed and a decree rendered here for the complainant, according to the prayer of the bill.